UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

AL PARVON,

                                          Plaintiff,

                                                         Case # 18-CV-226-FPG
v.

                                                          DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

## INTRODUCTION

Plaintiff Al Parvon brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 13, 20. For the reasons that follow, the Commissioner's motion is DENIED, Parvon's motion is GRANTED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion.

## BACKGROUND

The procedural history of this matter is long and complicated. In relevant part, Parvon protectively applied for a period of DIB and for Supplemental Security Income ("SSI") under Title XVI of the Act with the Social Security Administration ("SSA") in June of 2012. Tr.[1] 15, 71, 130–38. He alleged disability with an onset date of June 1, 2011 due to a stroke, a traumatic brain injury, hypertension, obesity, arthritis, and depression. Tr. 75, 130–38, 775. On October 9, 2013, Parvon

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 8.

appeared and testified at a hearing in Buffalo, New York before Administrative Law Judge ("ALJ") Robert T. Harvey. Tr. 15, 24. At the hearing, Parvon sought a period of disability from June 1, 2011 through January 14, 2013. Tr. 15. ALJ Harvey concluded that, although he suffered from severe impairments, Parvon had the residual functional capacity ("RFC") to perform his past relevant work. Tr. 19–24.

Following his relocation to Hawaii and the Appeals Council's denial of his request for review of ALJ Harvey's decision, Parvon filed suit in the United States District Court for the District of Hawaii. Tr. 934, 982; *Parvon v. Colvin*, No. 15-CV-110, 2016 WL 1047992 (D. Haw. Mar. 11, 2016). The court affirmed the Commissioner's decision in part and reversed in part. *Parvon*, 2016 WL 1047992, at *17. Specifically, the court found that ALJ Harvey erred in disregarding the medical opinion of one of the doctors who examined Parvon, Hillary Tzetzo, without analysis and that the Appeals Council erred in failing to consider a decision by the Department of Veteran's Affairs ("VA"). *Id.* at *10–13, *15–16.

As his case was pending, Parvon filed an additional application for DIB in Hawaii. Tr. 990–1003, 1078. On remand, the Appeals Council vacated the earlier decision of the Commissioner and consolidated Parvon's claims. Tr. 775–76, 1078. Following a move to North Carolina, Parvon appeared and testified at a hearing in North Carolina before ALJ Ethan A. Chase on August 17, 2017. Tr. 773, 787. ALJ Chase examined two periods of alleged disability: the same period examined by ALJ Harvey (June 1, 2011 through January 14, 2013) and a new period of September 26, 2013 through the date of his decision.[2] Tr. 775–76. On November 8, 2017, ALJ Chase issued a decision finding that Parvon was not disabled within the meaning of the Act. Tr.

---

[2] Parvon was employed full-time from January 15, 2013 through September 25, 2013 and earned income exceeding substantial gainful activity levels during that time. Tr. 775.

773–87. After moving back to New York, Parvon filed this action on February 12, 2018 seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I.     District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted).

### II.    Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470–71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments that is severe, the

analysis concludes with a finding of "not disabled." *Id.* If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. *Id.* § 404.1520(d). If not, the ALJ determines the claimant's RFC, which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)–(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits claimant to perform the requirements of his or her past relevant work. *Id.* § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *See id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.     ALJ Chase's Decision

ALJ Chase analyzed Parvon's claim for benefits under the process described above. At step one, he found that Parvon had not engaged in substantial gainful activity during the relevant periods. Tr. 775–76. At step two, ALJ Chase found that Parvon has the following severe

impairments: major depressive disorder, obstructive sleep apnea, obesity, ventral hernia, and chronic kidney disease. Tr. 776. At step three, he found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 777.

Next, ALJ Chase determined that Parvon retains the RFC to perform medium work[3] with additional limitations. Tr. 779–85. Specifically, ALJ Chase found that Parvon can: lift and carry up to fifty pounds occasionally and twenty-five pounds frequently; stand and/or walk for six hours in an eight-hour day; and sit for six hours in an eight-hour day; only perform simple, routine tasks for two-hour increments followed by customary breaks; and only have occasional and superficial interaction with the public and coworkers. Tr. 779. ALJ Chase further found that Parvon cannot: climb ladders, ropes, or scaffolds (but can frequently perform other postural activities); face concentrated exposure to extreme cold, heights, and hazards; or work without ready access to a restroom. *Id.*

At step four, ALJ Chase noted that Parvon worked previously as a sales representative but is unable to perform this work given his RFC. Tr. 785. At step five, ALJ Chase found that Parvon can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 785–86. Specifically, a vocational expert testified that Parvon could work as a laundry laborer, lumber sorter, or a hand packer. Tr. 786. Accordingly, ALJ Chase concluded that Parvon was not disabled under the Act. Tr. 786–87.

## II.  Analysis

Parvon argues that the Commissioner's decision must be overturned for multiple reasons. Specifically, Parvon argues that ALJ Chase erred in formulating his RFC in two respects: (1) by

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." Medium work also includes "sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).

improperly concluding that Parvon is capable of medium work and (2) by improperly formulating Parvon's non-exertional limitations.

## A. ALJ Chase's Medium Work Assessment

Parvon argues that he is only capable of light work. Specifically, he argues that the state agency that assessed his second claim for benefits was bound by ALJ Harvey's earlier light work determination. ECF No. 13-1 at 18–19. The Court agrees that the Commissioner's medium work assessment was procedurally improper.

ALJ Harvey determined that Parvon was limited to light work (with certain additional limitations) and that Parvon could perform his past relevant work in sales. Tr. 19, 23. During the claimed periods of disability, Parvon was an individual of "advanced age" under the regulations. Tr. 785; *see* 20 C.F.R. §§ 404.1563(e), 416.963(e). Based on the SSA's Medical–Vocational Guidelines (the "Grids"), advanced age can be outcome determinative with respect to disability for certain claimants based on their RFC, education, and previous work experience. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2; 20 C.F.R. §§ 404.1569, 416.969. ALJ Harvey's determination that Parvon could perform his past relevant work rendered Parvon's advanced age irrelevant, without resort to the Grids. 20 C.F.R. §§ 404.1560, 416.960; Tr. 23. ALJ Chase, however, determined that Parvon could not perform his past relevant work. Tr. 785. ALJ Chase instead found that Parvon was capable of performing medium work, which, under the Grids, rendered Parvon's advanced age irrelevant. *Id.*; 20 C.F.R. Pt. 404, Subpt. P, App. 2, tbl.3.

Parvon argues that, because his second application for DIB and SSI was filed while his initial claim was pending review before the District of Hawaii, Tr. 775, the state agency, and later ALJ Chase, should have adopted ALJ Harvey's light work assessment. ECF No. 13-1 at 18–20; ECF No. 21 at 3–4. If ALJ Chase had adopted ALJ Harvey's determination that Parvon was capable of light work, Parvon's advanced age could have resulted in a finding of disability pursuant

to the Grids. 20 C.F.R. Pt. 404, Subpt. P, App. 2, tbl.2.[4] The Grids could have thus shown that Parvon was disabled without need to resolve his disputed non-exertional limitations. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2) ("[W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone . . . .").

Parvon further argues that, because he filed his second application for benefits while he was in Hawaii, the state agency was bound by an acquiescence ruling applicable in the Ninth Circuit regarding the res judicata effect of final decisions of the Commissioner. ECF No. 13-1 at 18. Although it appears the Second Circuit has not weighed in on the subject, courts in this circuit regularly follow the same res judicata principles. *See, e.g.*, *Pisarek v. Saul*, No. 18-CV-200, 2019 WL 4750518, at *5–6 (W.D.N.Y. Sept. 30, 2019). Such principles are inapplicable here, however, because ALJ Harvey's decision was appealed to the District of Hawaii and the Appeals Council expressly vacated that decision upon remand. Tr. 1078; *Zayid v. Comm'r of Soc. Sec.*, No. 13-CV-54, 2014 WL 517466 (N.D. Ohio Feb. 7, 2014) ("[I]t is axiomatic that a decision vacated by the Appeals Council has no res judicata effect." (quotation omitted)); *Wireman v. Comm'r of Soc. Sec.*, 60 F. App'x 570, 571 (6th Cir. 2003) (unpublished) (finding that a vacated ALJ's decision did not

---

[4] Parvon argues that he would have automatically qualified for benefits under Grid 202.06 if ALJ Chase adopted the light work assessment. ECF No. 13-1 at 20. Because it was unnecessary given his medium work determination, ALJ Chase did not determine the transferability of Parvon's vocational skills. Tr. 785. The transferability of Parvon's vocational skills are generally relevant under the Grids if he is limited to light work. 20 C.F.R. Pt. 404, Subpt. P, App. 2, tbl.2. Accordingly, remand may be necessary to determine the transferability of Parvon's vocational skills. *See Clark v. Berryhill*, 697 F. App'x 49, 52 (2d Cir. 2017) (summary order) ("Where, as here, an ALJ fails to either set forth with sufficient specificity the claimant's acquired vocational skills or to make sufficiently specific findings about their transferability, and those findings were material to the outcome, remand to the Commissioner is warranted."). There is some evidence, however, that ALJ Chase believed that Parvon would be found disabled under the Grids if he were limited to light work because of a limitation to unskilled work. Tr. 784, 842. Given that remand is warranted on other grounds, the Court does not resolve this question.

bind the subsequent decision of an ALJ); *Demaio v. Berryhill*, No. 15-CV-5187, 2017 WL 4618749, at *4 (D.N.J. Oct. 13, 2017) ("In general, an ALJ decision vacated by the Appeals Council has no res judicata effect on a subsequent ALJ decision."); *Ferreira v. Saul*, No. 18-CV-30115, 2020 WL 128656, at *11 (D. Mass. Jan. 10, 2020) ("[A]s long as his decision is supported by substantial evidence, an ALJ's failure to explain why or how his . . . finding[s] deviate[] from that of a since vacated, prior decision does not constitute a viable basis for reversal." (quoting *Nichols v. U.S. Soc. Sec. Admin.*, No. 16-CV-443, 2018 WL 1307645, at *5 (D.N.H. Mar. 13, 2018))).

The law of the case doctrine, however, is a different matter. "[T]he law of the case doctrine 'ordinarily forecloses relitigation of issues expressly or impliedly decided by [an] appellate court.' *Marvin v. Colvin*, No. 15-CV-74, 2016 WL 2968051, at *3 (N.D.N.Y. May 20, 2016) (second alteration in original) (quoting *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 736 F.3d 198, 208 (2d Cir. 2013)). Relitigation is impermissible "absent 'cogent' and 'compelling' reasons such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Id.* (footnote omitted) (quoting *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008)). Courts within the Second Circuit have concluded that the doctrine applies to Social Security appeals. *Gladle v. Astrue*, No. 12–CV–284, 2013 WL 4543147, at *3–4 (N.D.N.Y. Aug. 27, 2013) (citing *Calderon v. Astrue*, 683 F. Supp. 2d 273, 276 (E.D.N.Y. 2010)). Further, courts have relied on the doctrine to limit an ALJ's opportunity to reexamine prior RFC determinations upon remand. *Calderon*, 683 F. Supp. 2d at 277; *Ischay v. Barnhart*, 383 F. Supp. 2d 1199, 1223 n.17 (C.D. Cal. 2005) ("[T]he Court finds that the ALJ's reassessment of Plaintiff's residual functional capacity in his third decision violated the doctrine of the law of the case and the rule of mandate . . . .").

On the other hand, the SSA's regulations provide that, upon remand, "[a]ny issues relating to [a] claim may be considered by the administrative law judge." 20 C.F.R. §§ 404.983, 416.1483. Accordingly, "[t]he Commissioner is permitted to take any action on remand that is not inconsistent with the Court's remand order." *Pronti v. Barnhart*, 441 F. Supp. 2d 466, 473 (W.D.N.Y. 2006) (citing *Sullivan v. Hudson*, 490 U.S. 877, 886–87 (1989)). Courts resolve the apparent conflict between the regulations and the law of the case doctrine by permitting the Commissioner to revisit any issues as long as the court has not remanded the case with specific instructions or made findings of fact. *See Thompson v. Astrue*, 583 F. Supp. 2d 472, 474–75 (S.D.N.Y. 2008) (collecting cases). The court in *Thompson*, however, recognized that a court may implicitly limit the scope of a remand. *Id.* at 475 (collecting cases). Accordingly, the question is whether ALJ Chase's inquiry on remand was either explicitly or implicitly limited by the District of Hawaii.

The District of Hawaii affirmed in part and reversed in part the Commissioner's initial decision in this matter. *Parvon*, 2016 WL 1047992, at *17. Specifically, the court remanded the case "to the ALJ for further administrative proceedings in order to determine, in conjunction with considering the entire record, the effect of Dr. Tzetzo's medical opinion and the [2013] VA decision on Plaintiff's disability assessment." *Id.* Both Dr. Tzetzo's medical opinion and the 2013 VA decision related to the impact of Parvon's non-exertional limitations. *Id.* at *11–13, *16. The court did not explicitly address the propriety of ALJ Harvey's finding that Parvon "was capable of performing light work with some limitations." *Id.* at *5.

Following the District of Hawaii's remand, the Appeals Council vacated ALJ Harvey's decision,[5] consolidated Parvon's pending disability claims, and remanded the matter to ALJ Chase "for further proceedings consistent with the order of the court." Tr. 1078. Although the Appeals Council recognized the need to comply with the District of Hawaii's remand order, it did not further weigh in on the appropriate actions for the ALJ to take on remand. *Id.*

Neither the Appeals Council nor the District of Hawaii explicitly limited the scope of the remand. Whether there is an implicit limitation in the remand regarding Parvon's light work exertional limitation is a much closer question. The District of Hawaii's remand order cited specific problems in the ALJ's analysis related to Parvon's non-exertional limitations, but ALJ Harvey's light work assessment was untouched. *See Parvon*, 2016 WL 1047992. Parvon's exertional limitations were not in dispute in the District of Hawaii. *Id.* at *5.

Courts regularly hold that a finding of error at step five of the sequential evaluation process implicitly affirms an ALJ's findings at the earlier steps. *Frank K. v. Comm'r of Soc. Sec.*, 371 F. Supp. 3d 163, 171–72 (D. Vt. 2019) (collecting cases). Courts finding such implicit affirmances point to the unchallenged nature of those findings, even though such findings often cannot be challenged. *See Frank K.*, 371 F. Supp. 3d at 171–72 (discussing this "procedural anomaly" (quoting *Calderon*, 683 F. Supp. 2d at 276–77)).[6]

---

[5] For purposes of the law of the case doctrine, it is of no moment that the Appeals Council vacated ALJ Harvey's decision. Tr. 1078. Both the Appeals Council and ALJ Chase were bound to abide by the law of the case. *See Marvin v. Colvin*, No. 15-CV-74, 2016 WL 11477507, at *7 (N.D.N.Y. Feb. 16, 2016).

[6] Courts sometimes justify this outcome by noting that, if an ALJ were permitted to revisit earlier steps in the sequential evaluation process, a court's decision regarding a later step in the process could be rendered irrelevant. *Frank K.*, 371 F. Supp. 3d at 172. That concern is not present here as ALJ Chase needed to assess Parvon's non-exertional limitations regardless of whether he was limited to light or medium work. In either case, Parvon's non-exertional limitations are relevant, at minimum, to his capacity to perform his past relevant work. 20 C.F.R. §§ 404.1560, 416.960.

In addition to the unchallenged nature of the light work RFC, there is a strong fairness justification for applying the law of the case in this context. ALJ Chase departed from ALJ Harvey's RFC conclusion in a way that made it substantially more difficult for Parvon to prove disability. Such a departure "suggests an improper attempt to justify, by whatever means necessary, a preordained conclusion that [Parvon] was not disabled." *Calderon*, 683 F. Supp. 2d at 278; *see also Clarke v. Bowen*, 843 F.2d 271, 276 (8th Cir. 1988) (Larson, J., dissenting) (arguing that "it is fundamentally unjust for the Secretary to 'reshuffle the cards' . . . once [claimant] was 'dealt a winning hand.'"). Other courts have applied the law of the case doctrine to prohibit similar departures. *Davis v. Sec'y of Health & Human Servs.*, 634 F. Supp. 174, 178 (E.D. Mich. 1986) (holding that ALJ's shift in RFC on remand from light to medium work was improper because the court's initial decision, remanding to assess other potential limitations, implicitly affirmed the ALJ's initial RFC determination); *Almarez v. Astrue*, No. 09-CV-140, 2010 WL 3894646, at *5–6 (C.D. Cal. Sept. 30, 2010) (finding that, where district court remanded for ALJ to consider medical opinions related to specific, additional RFC limitations, ALJ was barred by the law of the case from revisiting other, unrelated RFC limitations previously identified); *Meyerhoff v. Colvin*, No. 12-CV-3046, 2013 WL 3283696, at *18 (N.D. Iowa June 28, 2013) (same); *Allen v. Astrue*, No. 09-CV-7239, 2010 WL 4825925, at *8 (C.D. Cal. Nov. 2, 2010) ("[T]he stipulation for remand contemplated only a reconsideration of non-exertional limitations; the door on Plaintiff's physical limitations was closed. Thus, the ALJ's decision to reexamine Plaintiff's physical RFC and later find, despite prior decisions, that Plaintiff has a greater exertional capacity is irreconcilable with the stipulation for remand and the Appeals Council's order.").

Accordingly, ALJ Chase was bound by ALJ Harvey's light work assessment absent cogent and compelling reasons for a departure. *Marvin*, 2016 WL 2968051, at *3 Although ALJ Chase evaluated the state agency consultants' assessment of light work, he did not evaluate ALJ Harvey's assessment or provide cogent and compelling reasons for his departure from that assessment. Remand is necessary for the Commissioner to determine if there are cogent and compelling reasons to depart from ALJ Harvey's light work assessment—an issue that has not been addressed by the parties here. Because remand is warranted on this basis, the Court declines to address Parvon's argument that the medium work RFC was not supported by substantial evidence.

**B.      Parvon's Non-Exertional Limitations**

Parvon also argues that ALJ Chase erred in formulating the non-exertional portions of his RFC by (1) failing to properly address two VA decisions regarding his limitations, (2) failing to consider Parvon's Global Assessment of Function ("GAF") scores; and (3) substituting his own judgment for that of appropriate medical opinion.[7]

*1.      ALJ Chase appropriately weighed the VA's 2013 decision but failed to consider the VA's 2014 decision.*

Parvon cites two VA decisions, one from 2013 and one from 2014, and argues that ALJ Chase failed to afford the 2013 decision the appropriate weight and failed to consider the 2014 decision. ECF No. 13-1 at 13–15. The Court agrees that ALJ Chase improperly ignored the 2014 decision.

---

[7] Parvon further argues that ALJ Chase had no basis to conclude that Parvon needed to have ready access to a restroom and that such a limitation is pointless if he is not permitted to use the restroom, ECF No. 13-1 at 22–23, but "access" clearly implies the opportunity to "use." It is further unclear how Parvon could have been harmed by an RFC determination that was more restrictive than necessary, but even so, ALJ Chase supported the need for access to a restroom by pointing to evidence of Parvon's incontinence. Tr. 782.

The parties dispute the weight that a VA decision must receive. Parvon argues that ALJ Chase, sitting in the Fourth Circuit, was required to follow the Fourth Circuit's decision in *Bird v. Comm'r of Soc. Sec.*, 699 F.3d 337, 343 (4th Cir. 2012); ECF No. 13-1 at 13–14. In *Bird*, the Fourth Circuit held that "the SSA must give *substantial* weight to a VA disability rating." 699 F.3d at 343 (emphasis added). In the Second Circuit, VA decisions "are not binding on the ALJ, but are 'entitled to some weight and should be considered.'" *Rivera v. Colvin*, 592 F. App'x 32, 33 (2d Cir. 2015) (summary order) (quotation omitted). In *Rivera*, it was sufficient for the ALJ to reference a VA decision and explain why the decision did not alter the ALJ's analysis. *Id.*; *see also Lohnas v. Astrue*, 510 F. App'x 13, 14–15 (2d Cir. 2013) (summary order) ("Because the Commissioner is not bound by another agency's disability determination, and because the Commissioner's decision was supported by substantial evidence, any alleged failure by the ALJ to consider fully the disability determination by the Department of Veterans Affairs does not affect our decision to affirm.").

Because Parvon was domiciled in the Western District of New York at the time he filed this appeal, this Court is the proper venue for this action and this Court is bound to apply controlling Second Circuit law. *See Andrews v. Astrue*, No. 08-CV-2116, 2009 WL 4573239, at *1 n.3 (W.D. Ark. Dec. 1, 2009) (noting that ALJ's apply "statutory law and agency regulations, which are uniform throughout the nation" and holding that the law of the circuit in which the appeal was filed is applicable to the district court's decision) (citing 42 U.S.C. § 405(g)); *Alvesteffer v. Berryhill*, No. 18-CV-3027, 2019 WL 4892227, at *3 (C.D. Ill. July 24, 2019) ("It is understandable that an ALJ in Florida would not be familiar with the law of the Seventh Circuit. [Plaintiff], however, moved to this District. This Court is the proper venue for this case, and this Court must follow the law of this Circuit."), *R&R adopted in relevant part*, 2019 WL 4696396

(C.D. Ill. Sept. 26, 2019). The question, accordingly, is whether the ALJ considered the VA decisions and afforded them "some" weight. *Rivera*, 592 F. App'x at 33.

On September 4, 2013, the VA issued a seven-page Rating Decision, which explained why the VA assigned "a 70 percent evaluation for [Parvon's] major depressive disorder." Tr. 1276. Specifically, this assignment was based on difficulty adapting to stressful circumstances; occupational and social impairments ("deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood"); disturbances of motivation and mood; flattened affect; depressed mood; and difficulty in establishing/maintaining effective work and social relationships. Tr. 1276. The VA denied disability based on Parvon's alleged hernia, traumatic brain injury, and headaches. Tr. 1277–79. The VA's decision was applicable from April 10, 2012. Tr. 1275.

Just over a year later, on September 12, 2014, the VA issued a terse three-page Rating Decision and found that Parvon was entitled "to individual unemployability . . . effective September 26, 2013." Tr. 1281–83. In the cover letter to its decision, the VA explained that it assigned a disability rating of 90%, which it treated as 100% because Parvon was "unable to work due to [his] service connected disabilities." Tr. 1285. The VA used "a combined rating table that consider[ed] the effect from the most serious to the least serious conditions." *Id.* The VA's 2014 decision and cover letter provided no explanation for the rate change between 2013 and 2014, did not explain what disability resulted in the 90% rating, and did not discuss any medical evidence supporting its conclusions. Tr. 1281–89.

ALJ Chase explicitly recognized the VA's 70% disability rating for major depressive disorder contained in the 2013 decision. Tr. 784. ALJ Chase, however, noted that "[t]he VA uses a percentage rating in its determination, whereas the Social Security Administration uses a function-by-function analysis to make a determination as to the claimant's ability to perform past

relevant work or other work." *Id.*; *see also Monette v. Colvin*, 654 F. App'x 516, 518 n.3 (2d Cir. 2016) (summary order) (noting that the VA's disability rating "would be of limited relevance before the [SSA], since different rules and standards govern"). Nevertheless, ALJ Chase gave "the disability rating significant weight in limiting [Parvon] to simple, routine and repetitive tasks and in limiting the claimant's social interactions with the public and coworkers." Tr. 784. He further explained that Parvon's "mental examinations . . . have generally been unremarkable, revealing no more than mild attention and concentration problems, and they have not revealed any objective findings to suggest that [Parvon] is unable to perform unskilled work with . . . social restrictions." *Id.* ALJ Chase's handling of the 2013 decision was not improper. *Laubacker v. Colvin*, No. 15-CV-1055, 2017 WL 1352145, at *2 (W.D.N.Y. Apr. 12, 2017) (holding that "the ALJ was not obligated to accept the VA's assessment of plaintiff's level of disability").[8]

ALJ Chase, however, did not reference the VA's 2014 decision. Tr. 773–87. This was error. Soc. Sec. Ruling, SSR 06-03p., 71 Fed. Reg. 45593-03, 45596, 2006 WL 2263437 (Aug. 9, 2006) ("[E]vidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered."); *Perez v. Berryhill*, No. 15-CV-1841, 2018 WL 948285, at *5 (D. Conn. Feb. 20, 2018) (finding that it was reversable error for ALJ to discuss one Connecticut Department of Social Services decision but not two others).

The Commissioner argues that the 2014 VA decision contained the same 70% disability rating for depression as the 2013 decision explicitly analyzed by ALJ Chase. ECF No. 20-1 at 8–9. ALJ Chase, however, did not state that he was declining to consider the remainder of the 2014 VA decision because he was already giving the 70% depression disability rating "significant

---

[8] Parvon briefly argues that ALJ Chase failed to follow the District of Hawaii's remand order, which merely required the Commissioner to "consider" the 2013 VA decision. *Parvon*, 2016 WL 1047992, at *16–17. The court recognized "that a decision rendered by another governmental agency is not binding on the SSA." *Id.* ALJ Chase clearly considered the 2013 VA decision as required.

weight." Tr. 784. Instead, ALJ Chase simply ignored the 2014 decision. *Id.* "The Court may not affirm the ALJ's decision based on the Commissioner's *post hoc* rationalization." *Agostino v. Comm'r of Soc. Sec.*, No. 18-CV-1391, 2020 WL 95421, at *4 (W.D.N.Y. Jan. 8, 2020).[9]

Further, the Commissioner concedes that the VA's 2014 decision reflected a greater combined rating for disability than the 2013 decision. ECF No. 20-1 at 8–9. ALJ Chase should have considered the greater combined rating.[10] *Lawler v. Astrue*, No. 10–CV–3397, 2011 WL 5825781, at *9 (E.D.N.Y. Nov. 14, 2011) (holding that "the VA's disability determination [must] be accorded some actual weight, independent of and in addition to, the evidence in the record itself," and that, "[a]n ALJ . . . fails to give *any* weight to the VA's determination by merely reexamining the evidence and coming to a different conclusion"). The 2014 VA decision specifically concluded that Parvon was "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities" as of September 26, 2013. Tr. 1282. "Such a finding, though not binding, should at least be considered by an ALJ determining whether plaintiff is capable of engaging in 'substantial gainful activity,' a similar inquiry." *Lawler*, 2011

_____

[9] Other courts have acknowledged the availability of harmless error analysis in this context if an ALJ considers the evidence underlying the VA's decision and the ALJ's decision is supported by substantial evidence. *See Blessing v. Colvin*, No. 14-CV-1489, 2015 WL 7313401, at *10 (N.D.N.Y. Nov. 19, 2015) (collecting cases). The Court would be sympathetic to such an argument if there was no other basis for remand, especially given the dearth of analysis in the 2014 VA decision. *See Bitz v. Colvin*, No. 14-CV-7453, 2016 WL 1595383, at *10–11 (E.D.N.Y. Apr. 20, 2016) (finding ALJ's failure to explicitly consider another agency's decision was not error where the decision lacked analysis and the ALJ considered the underlying documents). *But see Perez*, 2018 WL 948285, at *5 (finding that ALJ's failure to discuss agency decisions "frustrates meaningful review"). Because there is another basis to remand this matter, the Court does not need to resolve this issue and the ALJ should weigh the VA decision upon remand. *See Hankerson v. Harris*, 636 F.2d 893, 896–97 (2d Cir. 1980).

[10] The VA's 2014 disability decision reflects a 90% disability rating. Tr. 1285. The parties both cite to a VA medical record that shows Parvon's 90% disability rating is comprised of 70% for major depressive disorder, 40% for traumatic brain disease, 30% for migraine headaches, 10% for inguinal hernia, 10% for lumbosacral or cervical strain, and 10% for superficial scars. Tr. 1623; ECF No. 20-1 at 9; ECF No. 21 at 3. Assuming this record accurately reflects the VA's 2014 disability decision, it demonstrates that the 2014 decision was a significant departure from the 2013 decision. In 2013, the VA explicitly denied Parvon's claims for disability for traumatic brain injury, headaches, and inguinal hernia. Tr. 1277–79.

WL 5825781, at *8 ("[T]he ALJ erred by failing to acknowledge, and therefore properly weigh, the VA's determination that plaintiff was 'unable to secure or follow a substantially gainful occupation.'").

ALJ Chase's failure to reference the 2014 VA decision was error and it should be considered upon remand.

### 2. ALJ Chase did not err in his treatment of Parvon's GAF scores.

Parvon argues that ALJ Chase's failure to consider his GAF scores constitutes reversable error. ECF No. 13-1 at 15–17. Although ALJ's are permitted to consider a claimant's GAF scores in determining RFC, GAF scores are not binding on an ALJ. *Santiago v. Colvin*, No. 12-CV-7052, 2014 WL 718424, at *20 n.10 (S.D.N.Y. Feb. 25, 2014) ("Even when the ALJ [considers a GAF score in evaluating RFC] . . . , she need not afford controlling weight to the GAF score, especially if it conflicts with the test administrator's other observations."); *see also Archbald v. Colvin*, No. 14-CV-7569, 2015 WL 7294555, at *1 n.2 (E.D.N.Y. Nov. 19, 2015) ("[T]he GAF is not standardized, nor is it routinely applied. It has been dropped from the recently issued DSM–V.").

A "GAF score is merely a 'snapshot opinion of one or more doctors as to an individual's level of social, psychological and occupational function at a specific point in time[,]' whereas '[a] determination of disability must be based on the entire record.'" *Velez v. Colvin*, No. 15-CV-487, 2015 WL 8491485, at *9 (S.D.N.Y. Dec. 9, 2015) (alterations in *Velez*) (quoting *Malloy v. Astrue*, No. 10-CV-190, 2010 WL 7865083, at *26 (D. Conn. Nov. 17, 2010)). An ALJ does not need to specifically reference each and every GAF score in the record. *See Parvon*, 2016 WL 1047992, at *8–7 (holding that ALJ Harvey did not need to review every GAF score in the record and noting that "Dr. Ahmed's treatment notes directly contradict the GAF score of 50 he assigned Plaintiff"); *Parker v. Comm'r of Soc. Sec.*, No. 10-CV-195, 2011 WL 1838981, at *6 (D. Vt. May 13, 2011)

(noting lack of authority that "a GAF score—in and of itself—demonstrates that an impairment significantly interferes with a claimant's ability to work").

ALJ Chase explicitly discussed Parvon's two lowest GAF scores in the record and explained his basis for giving those scores little weight. Tr. 780. ALJ Chase did not, however, explicitly discuss the GAF scores assigned by Dr. Hillary E. Tzetzo and Dr. Syed Ahmed.[11] Tr. 779–85. This was not reversable error. ALJ Chase discussed Dr. Ahemd's opinion and gave his conclusions "little weight" because they were inconsistent with Parvon's mental status examinations. Tr. 784.

ALJ Chase was less clear with respect to Dr. Tzetzo's opinion. ALJ Chase discussed Dr. Tzetzo's opinion regarding Parvon's alleged headaches but did not discuss Dr. Tzetzo's opinion with respect to other mental limitations. The District of Hawaii already found that ALJ Harvey erred in failing to consider Dr. Tzetzo's opinion. *Parvon*, 2016 WL 1047992, at *11–13. The court found that the error was not harmless because the mental limitations noted by Dr. Tzetzo— specifically his "[d]ifficulty in establishing and maintaining effective work and social relationships" and "in adapting to stressful circumstances"—could have prevented Parvon from performing his past relevant work as a sales representative. *Id.* at *11–12 (alteration in *Parvon*) (quoting Tr. 657). ALJ Chase, however, incorporated the mental limitations noted by Dr. Tzetzo in Parvon's RFC. Tr. 779, 785. Based on Parvon's mild depression and attention deficit, ALJ Chase limited Parvon's RFC to "simple, routine tasks" with limited "interaction with the public and coworkers." *Id.* Accordingly, ALJ Chase concluded that Parvon was incapable of performing his past relevant work. Tr. 785. To the extent there was any error in ALJ Chase's failure to

---

[11] ALJ Chase also did not specifically discuss the GAF score noted by the VA in its 2013 Rating Decision, Tr. 784, 1276, but it is unclear whether the GAF score noted by the VA is anything other than a duplication of the identical score noted by Dr. Tzetzo shortly before the VA issued its decision. Tr. 654, 664, 1274, 1276

specifically consider the mental limitations noted by Dr. Tzetzo and the low GAF score, the error was harmless. *See Hazelton v. Comm'r of Soc. Sec.*, No. 16-CV-427, 2017 WL 1437194, at *6 (N.D.N.Y. Apr. 21, 2017) ("[T]he failure to explicitly assign weight to an opinion is harmless in certain situations, such as . . . where the limitations assessed in the opinion are ultimately accounted for in the RFC." (quotation omitted)).

ALJ Chase's treatment of Parvon's low GAF scores does not warrant remand.

> ### 3. *ALJ Chase did not substitute his own judgment for that of appropriate medical opinion.*

Parvon also argues that ALJ Chase substituted his own "medical judgment" for that of a physician in formulating Parvon's RFC with respect to Parvon's non-physical limitations. ECF No. 13-1 at 20. Parvon points out that an "ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (quotation and alteration omitted). An RFC determination, however, does not have to "perfectly correspond" with the medical source opinions cited in the ALJ's decision; rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). "While an ALJ may render common sense judgment[s] about functional capacity, she just must avoid the temptation to play doctor." *Agostino*, 2020 WL 95421, at *3 (alteration in *Agostino*) (quotation omitted). *Compare Doney v. Astrue*, 485 F. App'x 163, 165 (9th Cir. 2012) (unpublished decision) (noting that an ALJ can draw reasonable inferences from a claimant's reports of daily activities), *with Agostino*, 2020 WL 95421, at *3 ("It is simply not a common-sense inference that [the claimant's] lumbar and knee problems, in conjunction with her obesity, would render her able to stand for 45 minutes at a time

so long as she could sit for one to two minutes. That is a more complex medical determination that requires a level of expertise that the ALJ does not have.").

Here, ALJ Chase found that Parvon had moderate limitations in understanding, remembering or applying information; in interacting with others; in concentrating, persisting, or maintaining pace; and in adapting or managing himself. Tr. 778. ALJ Chase concluded that these limitations left Parvon with the RFC to perform simple, routine tasks for 2-hour increments followed by customary breaks and to have only occasional and superficial interaction with the public and his coworkers. Tr. 779.

Although ALJ Chase was not permitted to assess Parvon's "RFC on the basis of bare medical findings," *Cutre v. Berryhill*, No. 17-CV-135, 2018 WL 3968385, at *3–4 (W.D.N.Y. Aug. 20, 2018) (quotation omitted), that is not what occurred here. ALJ Chase gave "great weight" to the opinion of Doctor Susan Santarpia, a psychologist. Tr. 558, 783. Dr. Santarpia completed a consultative examination of Parvon on September 4, 2012. Tr. 554, 558. Parvon reported short-term memory deficits and concentration difficulties, but Dr. Santarpia reported that he was "well groomed" and had: a cooperative demeanor; a euthymic mood; a coherent and goal directed through process; intact attention, concentration, and memory skills; average cognitive function; and poor insight and judgment. Tr. 555–56. Parvon further reported that medication and counseling help with his dysphoric mood, loss of interest, and social withdrawal. Tr. 554–55. Dr. Santarpia concluded that her evaluation "appear[ed] to be consistent with psychiatric and substance abuse problems, but . . . [these issues alone did] not appear to be significant enough to interfere with [Parvon's] ability to function on a daily basis." Tr. 557.

Parvon argues that it was improper for ALJ Chase to place great weight on Dr. Santarpia's opinion for several reasons. First, he argues that her opinion was stale because she did not have

access to all of the relevant records and he returned to work after she issued her opinion. ECF No. 13-1 at 23–24. "[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ['s] finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015) (quotation omitted), *aff'd*, 652 F. App'x 25 (2d Cir. 2016) (summary order). A medical opinion may be stale if it does not account for the claimant's deteriorating condition. *See, e.g.*, *Jones v. Comm'r of Soc. Sec.*, No. 10-CV-5831, 2012 WL 3637450, at *2 (E.D.N.Y. Aug. 22, 2012) (holding that ALJ should not have relied on a medical opinion in part because it "did not account for [claimant's] deteriorating condition").

Dr. Santarpia examined Parvon on September 4, 2012. Tr. 554–58. ALJ Chase issued his opinion just over five years later on November 8, 2017. Tr. 787. "[A] medical opinion is not necessarily stale simply based on its age." *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018); *Nolan v. Comm'r of Soc. Sec.*, No. 17-CV-1190, 2019 WL 342413, at *1, *6 (W.D.N.Y. Jan. 28, 2019) (finding that over four-year-old opinion was not stale). Although undoubtedly a lot can change in five years, the age of Dr. Santarpia's opinion is mostly attributable to this matter's lengthy procedural history and her opinion was issued within the time period for which Parvon seeks disability.

Importantly, there is no evidence in the record that Parvon's mental health deteriorated after Dr. Santarpia completed her examination. In fact, there is significant evidence that Parvon's condition improved. As Parvon points out, he returned to work in January 2013, four months after the examination. Tr. 775. Further, if GAF scores were to be credited as requested by Parvon, Parvon's lowest GAF scores all predate Dr. Santarpia's examination. Tr. 438–39, 442–44. Although there are certainly many medical records that postdate her examination, there is no basis to conclude that Parvon's condition deteriorated following his appointment with Dr. Santarpia or

that those records would alter her analysis. Those records appear largely consistent with the medical records available at the time of Dr. Santarpia's examination or show improvement, especially with medication. *See* Tr. 713–14, 716, 719, 1479–80, 1545–52, 1741–42; *Nolan*, 2019 WL 342413, at *6 (rejecting argument that opinion was stale where "[p]laintiff failed to show that her mental health impairment deteriorated after Dr. Jensen performed her examination and provided her opinion"); *see also Bautista v. Berryhill*, No. 18-CV-1247, 2019 WL 1594359, at *13 (D. Conn. Apr. 15, 2019) (finding no error in ALJ relying on non-examining sources who did not have benefit of reviewing the entire record where there was "no indication that the later received evidence would have changed the opinions").[12]

Parvon also argues that the weight ALJ Chase assigned the opinion of Dr. Santarpia conflicts with his RFC determination because his RFC determination contained mental limitations while Dr. Santarpia found no such limitations. ECF No. 13-1 at 22. Although it is true that not all of the mental limitations included in ALJ Chase's RFC determination were noted by Dr. Santarpia, she did note mental limitations. She specifically noted that his insight and judgment were poor and found "[m]ild impairment . . . in performing complex tasks independently and making appropriate decisions." Tr. 556–57. ALJ Chase accounted for this finding by limiting Parvon to "simple, routine tasks." Tr. 779. Further, it is not error for an ALJ to adopt a more restrictive RFC than that supported by a medical opinion upon which the ALJ placed great weight. *See Nolan*, 2019 WL

---

[12] Parvon argues that the 2013 and 2014 VA decisions both demonstrate his deteriorating condition and serve as additional records that Dr. Santarpia could have considered. Parvon has not cited any authority for the questionable proposition that a state agency consultant would rely on the decision of another agency rather than the medical records underlying that decision. The VA decisions also do not necessarily provide evidence that Parvon's condition was deteriorating. As the Commissioner points out, both the 2013 and 2014 VA decisions apparently rate Parvon as 70% disabled for his major depressive disorder. Tr. 1275–76, 1281–83, 1623. The 2014 decision appears to rate additional disabilities, but the decision provides no analysis for this change. Tr. 1281–89. The 2014 decision provides marginal, at best, evidence that Parvon's condition worsened.

342413, at *6. Parvon has accordingly demonstrated no error in ALJ Chase's use of Dr. Santarpia's opinion. *See Barber v. Comm'r of Soc. Sec.*, No. 15-CV-338, 2016 WL 4411337, at *7 (N.D.N.Y. July 22, 2016) ("It is well established that an ALJ may rely on the medical opinions provided by State agency consultants and that those opinion[s] may constitute substantial evidence.").

Finally, Parvon argues that ALJ Chase could not have given both "significant" weight to the VA's 2013 decision and "great" weight to Dr. Santarpia's opinion. ECF No. 13-1 at 22. Parvon has not directed the Court to any authority indicating that an ALJ errs by giving "great" weight to a medical opinion and "significant" weight to another agency's conflicting decision, but the Court notes that "significant weight" does not mean controlling weight. Accordingly, there is no inherent conflict in giving "great" weight to one opinion and "significant" weight to an arguably conflicting piece of evidence. Further, ALJ Chase explained his resolution of any "conflict" in these pieces of evidence. ALJ Chase gave the VA decision "significant" weight only with respect to Parvon's RFC limitations to "simple, routine and repetitive tasks and . . . [to occasional and superficial] interactions with the public and coworkers." Tr. 779, 784. Such limitations are consistent with some of the VA's findings. Tr. 1276. ALJ Chase cogently explained that further limitations were not supported by the underlying medical findings, Tr. 784, a determination he was free to make.

The Second Circuit has explained that "an [ALJ] is free to . . . choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (alteration in *Balsamo* and quotation omitted). Here, ALJ Chase weighed evidence and chose to credit Dr. Santarpia's opinion and other evidence over conflicting evidence suggesting that Parvon's mental impairments were more severe. ALJ Chase committed no error in doing so. *See Glover v. Astrue*, No. 08-CV-218, 2010 WL 1035440, at *4 (W.D.N.Y. Mar. 18, 2010) ("[T]here is nothing in the ALJ's decision, or in the transcript that constitutes an unfounded medical diagnosis on her part.

Her assessment of [plaintiff]'s residual functional capacity rests squarely on citation to treatment and evaluation notes, and plaintiff's own testimony about her daily life activities . . . .").

### C.    Reversal for a Calculation of Benefits is not Appropriate

Parvon asks that the matter be remanded solely for a calculation of benefits, rather than for further proceedings. In cases where there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision," reversal for a calculation of benefits may be appropriate. *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999). Courts have reversed and ordered that benefits be paid when the record provides persuasive proof of disability and a remand for further proceedings "would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). Where, however, the ALJ has applied an improper legal standard, it is more appropriate to remand for further proceedings and a new decision. *Rosa*, 168 F.3d at 82–83; *see also Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996). Here, it cannot be said that a remand for further proceedings would serve no purpose. An ALJ could depart from ALJ Harvey's assessment of light work with cogent and compelling reasons, could consider whether a light work assessment entitles Parvon to benefits, and should consider the impact of the 2014 VA decision. Accordingly, remand for further proceedings and a new decision is required. *See Stanzione v. Colvin*, No. 14-CV-224, 2016 WL 111430, at *10 (D. Vt. Jan. 11, 2016).

### CONCLUSION

For the reasons stated, the Commissioner's Motion for Judgment on the Pleadings, ECF No. 20, is DENIED and Plaintiff's Motion for Judgement on the Pleadings, ECF No. 13, is GRANTED. This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgement and close this case.

IT IS SO ORDERED.

Dated: March 9, 2020
      Rochester, New York

_____

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court